**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**TIMOTHY O'CONNELL,**

                                        **Plaintiff,**                    **03-CV-0880A(Sr)**

**v.**

**STATE FARM FIRE AND CASUALTY**
**COMPANY a/k/a STATE FARM GENERAL**
**INSURANCE COMPANY,**

                                        **Defendant.**

_____


## REPORT, RECOMMENDATION AND ORDER


           This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #4.


           Currently before the Court is: (1) plaintiff's motion for summary judgment

(Dkt. #12), declaring that defendant State Farm Fire and Casualty Insurance Company

("State Farm"), is obligated to defend him under a personal umbrella liability policy

against a claim of assault asserted against him in his personal capacity in _Sickau v._

_Timothy O'Connell, et al._, 03-CV-364A(Sr); and (2) State Farm's cross motion for

summary judgment dismissing any allegation or cause of action of bad faith  by State

Farm.  Dkt. #20.  For the following reasons, it is recommended that both motions be

granted.

**BACKGROUND**

Plaintiff Timothy O'Connell is a partner in the law firm of Siegel, Kelleher & Kahn.  Dkt. #14, ¶ 2.  He is insured under a personal liability umbrella policy ("policy"), issued by State Farm.  Dkt. #13, p.27.  The policy provides that if the insured is legally obligated to pay damages for a loss, State Farm will pay the insured's net loss minus the retained limit, up to the policy limits.  Dkt. #13, p.31.  The policy defines loss as "an accident that results in personal injury or property damage during the policy period." Dkt. #13, p.29.  Personal injury is defined as "bodily harm . . . shock, mental anguish or mental injury" and "assault and battery."  Dkt. #13, p.30.  However, the policy excludes personal injury "which is either expected or intended by [the insured]" or "is the result of [the insured's] willful and malicious act . . . ." Dkt. #13, p.32.  The policy also excludes coverage "for any loss caused by [the insured's] business operations or arising out of business property."  Dkt. #13, p.32.

Leslie Sickau, a former employee at Siegel, Kelleher & Kahn, alleges that Timothy O'Connell purposely bumped into her in the hallway at the offices of Siegel, Kelleher & Kahn on September 10, 2002 and, despite being assured by Siegel, Kelleher & Kahn that Mr. O'Connell would be spoken to and the matter would be taken care of, on October 15, 2002, Mr. O'Connell pushed the plaintiff and shouted "You are a dickhead;" "You have not seen physical yet;" and "Your days are numbered little girl." Dkt. #13, p.46.  Ms. Sickau reported the incident to the Buffalo Police Department, which charged Mr. O'Connell with second degree harassment.[1]  Dkt. #13, pp.55-58.

---

[1] "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: (1) He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . . ."  New York Penal Law § 240.25.

The matter was resolved with an Adjournment in Contemplation of Dismissal ("ACD")

on January 16, 2003.  Dkt. #13, p.59.


On May 6, 2003, Ms. Sickau filed a complaint alleging retaliation in

violation of Title VII of the Civil Rights Act of 1964 and New York Executive Law by

Siegel, Kelleher & Kahn; violation of New York Executive Law by both Siegel, Kelleher

& Kahn and Timothy O'Connell; and assault by Timothy O'Connell.  Dkt. #13, p.44; *see*

03-CV-364A(Sr).  Ms. Sickau alleges that as a result of the incidents of September 10,

2002 and October 15, 2002, she "suffered physical and mental anguish and distress

and has incurred medical expenses" and sustained "physical pain and mental

suffering."  Dkt. #13, pp.49, 51.


Mr. O'Connell's counsel forwarded a copy of the complaint to State Farm

and tendered the defense of this action by letter dated May 19, 2003.  Dkt. #13, p.64.

By letter dated June 9, 2003, State Farm informed plaintiff that

> We have reviewed the allegations of the complaint and have
> determined that there is no coverage under your Personal
> Liability Umbrella Policy for this claim.
>
> * * *
>
> There is no coverage because this claim was not the result
> of an accident, therefore this is not a loss as defined by the
> policy.  Thus, it does not meet the insuring agreement of the
> Personal Liability Umbrella Policy.
>
> Also, there is no coverage for personal injury or property
> damage caused by your business operations, as there is an
> applicable exclusion for same.

>In addition, if it is determined personal injury or property damage was either expected or intended by you or was the result of your willful and malicious acts, there would also be no coverage due to no [sic] applicable exclusion.
>
>Finally, there is no coverage available for the punitive damage claims contained in this lawsuit, because it is against the public policy of the state of New York for an insurance contract to provide such coverage.

Dkt. #13, pp.68-70.

By letter dated July 11, 2003, counsel reiterated plaintiff's position regarding State Farm's obligation to provide a defense in the underlying action and asserted that

>in light of the long-established New York case law, which clearly demonstrates Mr. O'Connell's entitlement to a defense, as well as representations by your agents that the events alleged in the Underlying Actions fell within the policy's coverage, it is evident that State Farm's denial of coverage was made in bad faith.

Dkt. #13, pp.73-74.

By letter dated September 5, 2003, State Farm reiterated it's position that

>there is no covered cause of action in Ms. Sicka[u]'s complaint.  Additionally, all disclaimers were made in a timely manner.  Lastly, I direct your attention to Endorsement FE7786, a copy of which is enclosed for your convenience, which is listed on Mr. O'Connell's declaration page.  As you can see, the endorsement changes the applicable definition of "personal injury."  Under this endorsement, it eliminates mental anguish, shock, as well as assault and battery from the definition of personal injury.

Dkt. #13, p.79.  The attached endorsement redefines loss as "an accident . . . which results in bodily injury or property damage during the policy period." Dkt. #13, pp.83-84.

Bodily injury is defined as "physical injury . . . emotional distress or mental injury to a person."  Dkt. #13, p.83.  The endorsement excludes coverage "for bodily injury or property damage which is either expected or intended by you; or to any person or property which is the result of your willful and malicious act . . ." and "for any loss caused by your business pursuits or arising out of business property."  Dkt. #13, pp.84-85.  Mr. O'Connell denies receipt of the endorsement prior to September 5, 2003.  Dkt. #14, ¶¶ 11, 23-24.

Plaintiff filed this action on November 24, 2003, asserting two causes of action: (1) declaratory judgment that State Farm is obligated to defend Mr. O'Connell with respect to the lawsuit commenced by Ms. Sickau and has acted in bad faith in denying such defense; and (2) violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an

admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H.Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Duty to Defend**

"It is well settled under New York law that an insurer's duty to defend is 'exceedingly broad.'" *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998), *quoting Continental Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993). "An insurer must defend whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage." *IBM Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002), *quoting Continental*, 80 N.Y.2d at 648.

"Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." *Id., quoting First Investors*, 152 F.3d at 165-66. "In determining whether a policy exclusion applies, the facts alleged in the complaint, rather than the conclusory assertions found therein, are controlling." *Willard v. Preferred Mut. Ins. Co.*, 242 A.D.2d 960 (4th Dep't 1997), *lv. denied*, 91 N.Y.2d 814 (1998); *see Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992) ("the analysis depends on the facts which are pleaded, not the conclusory assertions.").

The insurer can only be excused from defending its insured "because of the language of the policy exclusion if it could establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify him under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985).  So long as the claims asserted against the insured may rationally be said to fall within the policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend.  *Seaboard Surety Co. v. Gillete Co.*, 64 N.Y.2d 304, 310-311 (1984).  "It is well settled that '[w]here there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer.'"  *IBM Corp.,* 303 F.3d at 424-25, *quoting Handelsman v. Sea Ins. Co. Ltd.*, 85 N.Y.2d 96, 101 (1994).

### Accidental Loss

State Farm disclaimed coverage under the policy because the "claim was not the result of an accident, therefore this is not a loss as defined by the policy."  Dkt. #13, p.70.  State Farm also informed Mr. O'Connell that "if it is determined personal injury or property damage was either expected or intended by you or was the result of your willful and malicious acts, there would also be no coverage due to no [sic] applicable exclusion."  Dkt. #13, p.70.  Although the first disclaimer denies the existence of coverage in the first instance, while the second relies upon an exclusion, the analysis is the same because the exclusion is "nothing more than a restatement of the requirement that the harm be the result of an accident for there to be coverage."  *Jubin v. St. Paul Fire & Marine Ins. Co.*, 236 A.D.2d 712 (3d Dep't 1997).

"In deciding whether a loss was the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual and unforeseen."  *Allegany Co-op Ins. Co. v. Kohorst*, 254 A.D.2d 744 (4th Dep't 1998), *citing Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 677 (1976); *see Agoado Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 145 (2000).  The emphasis in this inquiry is not necessarily upon the intent to act, but upon the intent to cause harm.  This distinction is important because

> Accidental results can flow from intentional acts.  The damage in question may be unintended even though the original acts leading to the damage were intentional.

*Allegany Co-Op*, 254 A.D.2d at 744; *see Continental v. Rapid-American*, 80 N.Y.2d at 649 ("Resulting damage can be unintended even though the act leading to the damage was intentional.").  Thus, the "critical question is whether the harm that resulted . . . could have been other than harm 'intentionally caused' within the meaning of the policy exclusion."  *Mugavero*, 79 N.Y.2d at 159.


 "Clearly more than a causal connection between the intentional act and the resultant harm is required to prove that the harm was intended."  *Id.* at 160.  For example, the intentional act exclusion did not absolve the insurer of its obligation to defend an insured who "picked up a shotgun, pointed it at his friend and pulled the trigger, believing the gun to be unloaded."  *Slayko v. Security Mut. Ins. Co.*, 98 N.Y.2d 289, 293 (2002); *see also Trafalski v. Allstate Ins. Co.*, 258 Ad.2d 888, 889 (4th Dep't 1999) (insurer failed to establish as a matter of law that insured reasonably expected victim to sustain burn injuries when he set the victim's jeans on fire while engaging in

horseplay); *Kohorst*, 254 A.D.2d at 745 ("physical and/or emotional harm to another person is not the inherent result of an arson committed for insurance purposes, but may be the unexpected or unintended result of an intentional act.").

In certain cases, the Court has determined that the theoretical possibility that the insured lacked the subjective intent to cause harm does not preclude a finding that such injuries are, as a matter of law, intentionally caused. *Progressive N. Ins. Co. v. Rafferty*, 17 A.D.3d 888 (3d Dep't 2005).

> It is now well settled that there exists a narrow class of cases in which the intentional act exclusion applies regardless of the insured's subjective intent. In such cases, the intentional act exclusion [applies] if the injury [is] inherent in the nature of the wrongful act. An injury is held to be inherent in the nature of an act when the act is so exceptional that cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm.

*Id.* (internal quotations and citations omitted). Sexual abuse of children, nonconsensual sexual contact, sexual harassment and domestic violence have all been determined to be examples of harm inherent in the nature of the insured's intentional act as a matter of law. *Sidney Frank Importing Co. v. Farmington Cas. Co.,* 1999 WL 173263 (Mar. 26, 1999) (sexual harassment), *aff'd,* 199 F.3d 1323 (2d Cir. 1999)*; Mugavero*, 79 N.Y.2d at 160 (sexual abuse of children); *Doyle v. Allstate Ins. Co.,* 255 A.D.2d 795 (4th Dep't 1998) (domestic violence); *Pistolesi*, 223 A.D.2d at 97 (nonconsensual sexual contact); *see also Peters v. State Farm Fire & Cas. Co.*, 306 A.D.2d 817 (4th Dep't 2003) (injuries sustained when insured repeatedly swung baseball bat knowing that the bat was

striking a person can only be described as "intentionally caused" as a matter of law),

*aff'd as modified on other grounds,* 100 N.Y.2d 634 (2003).


   In the instant case, the factual conduct underlying Ms. Sickau's complaint

against Mr. O'Connell consists of the following allegations:

> • On or about 9/10/02, Mr. O'Connell "purposely bumped
> into Ms. Sickau in the hall at the offices of Siegel,
> Kelleher & Kahn;"
>
> • On or about 10/15/02, Mr. O'Connell "pushed" Ms.
> Sickau and said:
>   "You are a dickhead;"
>   "You have not seen physical yet;" and
>   "Your days are numbered little girl."

Dkt. #13, pp.46-47.   Ms. Sickau alleges that Mr. O'Connell "intentionally and without

provocation pushed, shoved or otherwise placed his hands or other body parts upon

[her] person . . . with[out] permission or justification," resulting in "physical pain and

mental suffering."  Dkt. #13, p.51.   Ms. Sickau claims to have "suffered physical and

mental anguish and distress" and to have "incurred medical expenses."  Dkt. #13, p.49.


   The Court is not persuaded that these allegations establish as a matter of

law that Mr. O'Connell intended to cause Ms. Sickau physical pain and mental

suffering.[2]  Instead, the Court finds these allegations similar to those in which the intent

---

[2] The Court notes that it is irrelevant whether the definition of loss contained in the policy or the endorsement is referenced in this analysis since both definitions encompass plaintiff's allegations of physical pain and mental suffering. The policy provided to Mr. O'Connell defined loss as "an accident that results in personal injury or property damage during the policy period."  Dkt. #13, p.29. Under the endorsement, loss is defined as "an accident . . . which results in bodily injury or property damage during the policy period."  Dkt. #13, pp.83-84.  The definition of personal injury under the policy includes "bodily harm, shock, mental anguish or mental injury;" the definition of bodily injury under the endorsement includes "physical injury . . . emotional distress or mental injury to a person."  Dkt. #13, pp.30, 83.

to cause injury cannot be determined to follow from the intentional act as a matter of

law.  For example, in *Baldinger v. Consolidate Mut. Ins. Co.*, the intentional act

exclusion did not apply where the insured "intended to force the infant plaintiff to leave

the place where she was standing, and did in fact intend an offensive contact for the

purpose of forcing her to leave said place," but "did not intend to cause injury to the

infant plaintiff."  15 A.D.2d 526 (4th Dep't 1961), *aff'd,* 11 N.Y.2d 1026 (1962).


Similarly, in *Jubin v. St. Paul Fire & Marine Ins. Co.*, plaintiff and an

employee at a hotel gift shop engaged in a verbal confrontation, which allegedly ended

with the plaintiff grabbing the employee and telling her to "lighten up."  236 A.D.2d at

712.  The Court determined that

> while the complaint alleges that [the employee] sustained
> serious and permanent physical injury and extreme
> emotional distress, the allegations of plaintiff's offensive
> contact with [the employee] consist of relatively minor acts.
> In particular, the complaint alleges only that plaintiff "did so
> accost, grab, grasp, grope, push, detain and assault * * *
> [the employee] thereby causing harmful and offensive
> contact."  Where, as here, the complaint in the underlying
> action can be construed as alleging intentional offensive
> contact that results in unintended serious harm which is not
> inherent in the nature of the physical contact, coverage will
> be sustained.

*Id.* at 713, *citing Baldinger*, 15 A.D.2d 526.


As in *Baldinger* and *Jubin*, the relatively minor allegations of physical

contact alleged by Ms. Sickau, even when combined with the verbal comments, cannot

necessarily be expected to have resulted in physical and emotional injury.  Physical and

emotional injury is not inherent the level of confrontation alleged in the complaint and it

is possible that Mr. O'Connell intended to commit the alleged acts against Ms. Sickau without intending the consequences allegedly suffered by Ms. Sickau.  State Farm recognized this possibility when it informed Mr. O'Connell that there would be no coverage "if it is determined personal injury . . . was either expected or intended by you or was the result of your willful and malicious acts . . . ."  Since that is an open question at this point, State Farm is obligated to defend Mr. O'Connell.


<u>Business Operation Exclusion</u>

In its Answer to Mr. O'Connell's Complaint, State Farm asserted the exclusion for losses "arising out of business pursuits" as an affirmative defense. However, the policy excludes coverage for "for any loss caused by [the insured's] business operations or arising out of business property," while the endorsement excludes coverage "for any loss caused by your business pursuits or arising out of business property.  Dkt. #13, pp.32, 84-85.  Thus, the affirmative defense asserted within the Answer is inconsistent with the business exclusion contained within either the policy or the endorsement.


In any event, Insurance Law § 3420(d) precludes State Farm from attempting to rely upon exclusions other than those contained within its June 9, 2003 letter.  New York Insurance Law § 3420(d) provides:

> If under a liability policy delivered or issued for delivery in
> this state, an insurer shall disclaim liability or deny coverage
> for death or bodily injury arising out of a motor vehicle
> accident or any other type of accident occurring within this
> state, it shall give written notice as soon as is reasonably
> possible of such disclaimer of liability or denial of coverage
> to the insured and the injured person or any other claimant.

Thus, when a liability insurer is notified of a claim, New York Insurance Law § 3420(d) requires the insurer to "timely disclaim coverage in order to avoid its duty to defend and indemnify" unless "the policy on which the claim rests does not, by its terms, cover the incident giving rise to liability." *Handelsman v. Sea Ins. Co. Ltd.*, 85 N.Y.2d 96, 99 (1994). In other words,

> A disclaimer is unnecessary when a claim does not fall
> within the coverage terms of an insurance policy.
> Conversely, a timely disclaimer pursuant to Insurance Law §
> 3420(d) is required when a claim falls within the coverage
> terms but is denied based on a policy exclusion.

*Markevics v. Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 648-49 (2001) (internal quotation omitted).

In it's letter of June 9, 2003, State Farm disclaimed coverage based upon the policy's exclusion for "personal injury or property damage caused by your business operations." Dkt. #13, p.70. However, nothing in the complaint or evidence presented suggests that Ms. Sickau's physical pain and mental suffering was caused by Mr. O'Connell's business operations, *i.e.*, legal practice. The fact that the alleged injury was inflicted on the business premises or that Ms. Sicakau was employed by the business is insufficient to establish causation as a matter of law. Accordingly, State Farm has not demonstrated that the business operations exclusion relieves it of its obligation to defend Mr. O'Connell.

**Bad Faith**

As part of its first cause of action seeking a declaratory judgment that State Farm is obligated to defend Mr. O'Connell in the action commenced by Ms.

Sickau, Mr. O'Connell also seeks a declaration that State Farm "acted in bad faith in denying a defense inasmuch as [State Farm's] conduct as described in this Complaint is part of a pattern and practice which affects other insureds of Defendant in addition to Plaintiff."  Dkt. #21, p.29, ¶¶ 91, 102.  Mr. O'Connell alleges that State Farm issued the disclaimer letter after numerous assurances that he would be afforded a defense and that State Farm belatedly attempted to rely upon language contained in an endorsement which he denies receiving prior to commencement of this action and which appears to have been drafted ten months after the incidents alleged in the underlying complaint and subsequent to the effective date of the policy.  Dkt. #21, p.19, ¶¶ 38, 59, 61, 69.  Plaintiff seeks costs and punitive damages with respect to his claim of bad faith.  Dkt. #21, p.33.

> A complaint does not state a claim for compensatory or punitive damages by alleging merely that the insurer engaged in a pattern of bad-faith conduct.  The complaint must first state a claim of egregious tortious conduct directed at the insured claimant.

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 615 (1994).

Mr. O'Connell's allegations fail to meet this standard.  *Cf. Polidoro v. Chubb Corp.*, 354 F. Supp.2d 349, 351 (S.D.N.Y. 2005) (allegations of denial of physical therapy in breach of insurance contract failed to meet the high standard necessary to enable a claim for bad-faith conduct in handling insurance claims to go forward).  Accordingly, it is recommended that any claim for compensatory or punitive damages based upon Mr. O'Connell's allegations of bad faith by State Farm be dismissed.

## CONCLUSION

For the foregoing reasons, it is recommended that the plaintiff's motion for summary judgment (Dkt. #12), declaring that State Farm is obligated to provide a defense under a personal umbrella liability policy with respect to a claim for assault asserted against plaintiff in his personal capacity in *Sickau v. Timothy O'Connell, et al.*, 03-CV-364A(Sr) be **GRANTED**; and State Farm's cross motion for summary judgment (Dkt. #20), dismissing any claim for compensatory or punitive damages based upon Mr. O'Connell's allegations of bad faith by State Farm be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Rule 72(b) of the Federal Rules of Civil Procedure 72(b), and Rule 72.3(a)(3) of the Local Rules for the Western District of New York.

The district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

-16-

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985); *see also Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the to the attorneys for the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
           July 1, 2005

                                        **/s/ H. Kenneth Schroeder, Jr.**
                                        _____
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

-17-